

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Marvin Hall, Commissioner
Board of Insurance Commissioners
Austin, Texas

Dear Sir:                    Attention: Mr. Girard Kinney

Opinion No. O-760
Re: Which of the companies involved
should return the premium to
the assured in the situation
presented?

Your recent request for an opinion of this Department on the question as is herein stated has been received.

We quote from your letter as follows:

"In cases in which an agent for an insurance
company has collected premiums from assureds on
policies which the agent has issued for the in-
surance company, this Department has held that the
payment of premium to the company's agent was, for
all purposes and intents, the same as the payment
of the premium to the company. In other words, if
a company's agent collects a premium on one of their
policies and fails to remit the premium to the com-
pany in question, the insurance company cannot can-
cel the policy for non-payment of premium until
the company has allowed the assured the pro rata
return premium due him. Now the question has arisen
in this Department as to cases in which a number
of companies are involved in a matter of this kind,
which of the companies is liable for the return prem-
ium due the assured. The situation in mind is as
follows:

Honorable Marvin Hall, Page 2

"An agent represents Company No. 1, and issues a policy of insurance for that company to an individual. The premium is in turn paid to the agent by the assured; however, this premium is not remitted to the company, and sixty days' time, the company exercises its right to cancel the policy for non-payment of premium and notifies the agent either to collect the premium or cancel the policy. The agent, having collected the premium and converted same to his own use, contacts the assured, and instead of tendering the return premium due the assured in order for him to pick up the company's policy for cancellation, substitutes a policy in another company, hereafter known as Company No. 2. The assured, therefore, surrenders policy in Company No. 1 for cancellation since he has been provided by the agent with a policy in Company No. 2, which is acceptable to him, for the unexpired term of the policy in Company No. 1.

"Sixty days after this latter transaction, Company No. 2 contacts the agent and requests either the remission of the premium or the cancellation of the policy. The agent fails to do so; therefore, the company notifies the assured by registered mail that his policy has been cancelled for non-payment of premium. However, the assured maintains, and justly so, that he is entitled to coverage from one of the companies involved for the reason that he has paid to the agent for these companies premium for such coverage, and no return premium has been tendered to him.

"In numerous other cases, the same procedure is followed with the exception that a third company is involved before the assured is finally notified that his policy is cancelled for non-payment of premium.

"Because of the agent's unethical and dishonest practices, we have cancelled his license to do business as an agent; however, we are at a loss to know which company to hold responsible for the return premium. In most cases, the assured still holds the policy in the last company on the risk;however, this policy is supposedly cancelled by the company by registered

notice of cancellation. Company No. 1 advised this
Department that it does not feel that it is liable
for the return premium due the assured for the rea-
son that the assured wilfully surrendered policy No.
1 in exchange for a policy in Company No. 2 written
for the unexpired term. Company No. 2 disclaims
any liability on the assumption that the premium was
actually paid to the agent for policy in Company No.
1, and that no premium was paid to the agent acting
as such for Company No. 2. In cases in which three
companies are involved, Company No. 3 manifests the
same denial of liability for return premium as does
Company No. 2.

"We, therefore, respectfully submit to you the
question: Which of the companies involved shall this
Department require to allow the return premium to the
assured?"

Insurers are bound by the acts, conduct and repre-
sentations of their agents. The authority of an agent is
presumed to be co-extensive with the business entrusted to
his care, and includes the authority to do all those things
which are necessary and proper in carrying on the business
in its usual manner and which the principal could and would
usually do in similar circumstances. Texas Jurisprudence,
Vol. 24, page 804; Swartz Company v. Minnesota Mutual Life
Insurance Company, 293 S. W. 256.

An insurer may stipulate for the prompt payment of
the premiums due and provide a forfeiture by way of penalty
to enforce such stipulation. Home Insurance Company v. Puckett,
27 S. W. (2d) 111; Great Southern Life Insurance Company v.
Walters, 20 S. W. (2d) 886.

As in the case of agencies in general, an insurance
company is bound by all acts, contracts or representations
of its agent, whether general or special, which are within the
scope of his real or apparent authority, notwithstanding they
are in violation of private instructions or limitations upon
his authority of which the person dealing with him, acting in
good faith has neither actual nor constructive knowledge. In
accordance with this rule the company is liable in damages
for the fraud or other wrongful acts of its agents within the
scope of his actual or apparent authority, such as failing or



unreasonably delaying to send the application to the company. Corpus Juris, Vol. 32, pages 1063 and 1064.

We believe that the opinion of the court in the case of Stuyvesant Insurance Co. v. D. C. Herndon & Co. et al, 75 S. W. (2d) 843 answers the question with reference to the liability of the various companies under the above statement of facts. We quote from the above mentioned opinion as follows:

"The following counter proposition of Mechanics' Insurance Company states the law applicable: 'Where an insurance agent doing a general insurance business writes an insurance policy in one company and collects the premium therefor and later said policy is cancelled, which cancellation is ratified by the policy holder, and an agreement is reached between said insurance agent and said policy holder that the unearned premium due the policy holder shall be applied on another policy in another company, and said agent re-writes said policy in another company, and fails to apply the unearned premium money, as agreed, and the company in which the policy is re-written cancels such policy, it is not error for a judgment to be rendered against such company for the unearned premium on that policy.'

"The policy of insurance with the Mechanics' Insurance Company of Philadelphia was legally canceled. The cases cited by appellant to the effect that their could be no cancellation of the first policy without the full knowledge and consent of the insured are not in point, because the insured had full knowledge of and consented to the cancellation of the first policy and accepted the second policy and paid the premium thereon. Finley v. New Brunswick Ins. Co. (C.C.) 193 F. 195; Alliance Ins. Co. v. Continental Gin C. (Tex. Civ. App.) 274 S. W. 299; Natl. Fire Ins. Co. v. Oliver (Tex. Civ. App.) 204 S. W. 367.

"The agreement between the insured and Jones, the general agent, to apply the unearned premium on the first policy and the $88.80 paid by insured as payment of the premium on the second policy, was the same as if the insured had paid the entire premium in money and

the agent had failed to report it to the insurance company. This agreement with regard to payment of the premium was within the apparent authority of the general agent, if not his actual authority, and his agreement bound the company. Kohn Bros. v. Washer & August, 64 Tex. 131, 53 Am. Rep. 745; Great Southern Life. v. Dolan (Tex. Civ. App.) 239 S. W. 236; Bernard v. Fidelity Union Casualty Co. (Tex. Civ. App.) 296 S. W. 693; Illinois Bankers Life v. Dodson (Tex. Civ. App.) 189 S. W. 922.

"The payment of a premium to an agent authorized to issue policies and collect premiums is payment to the insurance company. This is true, although the agent does not forward the premium to the company, and though he converts the money to his own use. Preferred Accident Ins. Co. v. Stone, 61 Kan. 48, 58 P. 986; Cahill v. Andes Ins. Co., 4 Fed. Cas. 1001, No. 2,289."

Under the facts stated in your enquiry, the assured paid the premium to the first company issuing the policy by paying it direct to the agent. When the first company exercised its right to cancel the policy, such company must return or tender the unearned premium to the assured. The agent, who collected the premium for the first company, substituted a policy in another company, referred to as Company No. 2. The assured surrendered the policy in Company No. 1 for cancellation since he had been provided with the policy in Company No. 2, by the agent which was acceptable to the assured for the unexpired term of the policy in Company No. 1, and he accepted the policy in Company No. 2 in lieu of the policy issued by the first company. The offering of another policy to the assured by the agent in lieu of the unearned premium due him on the first policy, which was accepted by him, was in effect a tender of unearned premium due the assured by the first company, and the assured accepted the policy in the second company in lieu of the unearned premium due him on the cancellation of the first policy; in other words, the unearned premium which was in the legal possession of the agent and due the assured, was substituted by the assured for the policy in the second company and agent, as such, for the second company received the unearned premium due the assured on the first policy as payment of the premium on the second policy. Therefore, the second company had legally received the payment of the premium on the policy issued by it. Like reasoning would

apply to the third company and other companies if there were more than three companies.

We have carefully considered the opinion of this Department written by Hon. Sidney Benbow, Assistant Attorney General, December 8, 1931, addressed to Hon. Jess W. Carter, Deputy Life Insurance Commissioner, Austin, Texas, Volume 328, page 961, Letter Opinions, and believe the facts discussed in that opinion are different and can be distinguished from the facts confronting us in this opinion. However, if the facts in the above mentioned opinion are construed to be identical or the same as the facts in this opinion, the opinion of this Department bearing the date December 8, 1931, above referred to, is hereby expressly overruled insofar as it conflicts with the holdings of this opinion.

In view of the foregoing authorities, you are respectfully advised that it is the opinion of this Department that Company No. 2, or the last company issuing the policy under like conditions as Company No. 2 issued the policy, would be liable for the unearned portion of the premium and Company No. 1 would not be liable for the same, nor would Company No. 2 be liable in the event there were three companies involved in the above mentioned transactions.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Ardell Williams_

Ardell Williams
Assistant

APPROVED JUL 16, 1940

FIRST ASSISTANT
ATTORNEY GENERAL

AW:BBB


APPROVED
OPINION
COMMITTEE
BY _BWB_
CHAIRMAN